**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 1̶5̶-̶c̶r̶ ~1 Y-Cr- 183-CmB~

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.  TERRELL LAYNE SMITH,
    aka "Swiss,"

     Defendant.

---

## PLEA AGREEMENT

---

    The United States of America, by and through Alecia L. Riewerts, Assistant United States Attorney, and defendant, Terrell Layne Smith, personally and through counsel, Marc Milavitz of The Alternative Law Office of Marc Milavitz, P.C., submit the following Plea Agreement.

### I. PLEA AGREEMENT

    Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this plea agreement is not binding on the court. Because the government is agreeing to dismiss the Indictment, the defendant will be permitted to withdraw his plea of guilty if this Court rejects this agreement pursuant to Rule 11(c)(1)(A) and (c)(5) of the Federal Rules of Criminal Procedure.

1

**COURT EXHIBIT
1**

A. **Defendant's Obligations**

    1. **Count of Conviction**

The defendant agrees to plead guilty to Count One of the Information charging a violation of 18 U.S.C. § 2423(a), Transportation with Intent to Engage in Criminal Sexual Activity. The defendant also agrees to admit the Forfeiture Allegation contained in the Indictment.

    2. **Sentencing Position**

As part of this agreement, the defendant agrees not to seek a sentence less than 151 months imprisonment.

    3. **Waiver of Appeal**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 29; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to,

a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

4. **Defendant's Abandonment of Right, Title, and Claim to Seized Property**

The United States of America and the defendant hereby agree that any property subject to forfeiture pursuant to 18 U.S.C. § 2428, seized from the defendant or his co-defendants, and currently in the custody and/or control of the Federal Bureau of Investigation (FBI) was properly seized and that such property constitutes evidence, contraband, or fruits of the crimes to which the defendant has pleaded guilty. As such, the defendant hereby relinquishes all claims, title, and interest the defendant has in such property, specifically one Samsung Galaxy SIII cellular phone to the United States of America with the understanding and consent that the FBI or other appropriate agency, is to destroy the property described above forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the plea agreement in this case, the defendant hereby states under penalty of perjury that the defendant was the sole and rightful owner of the previously referenced property, and that the defendant hereby voluntarily abandons all right and claim to this property.

5. **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2428, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere.  The assets to be forfeited specifically include, but are not limited to: one Samsung Galaxy SIII cellular phone.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

B. **Government's Obligations**

1. **Dismissal of Charges**

If the defendant enters an unconditional plea of guilty to Count One of the Information charging a violation of 18 U.S.C. § 2423(a), Transportation with Intent to Engage in Criminal Sexual Activity and otherwise fulfills all obligations outlined above, the government will move to dismiss the Indictment.

2. **Sentencing Position**

Provided that the guideline range is calculated consistent with or higher than the

estimated range contained in this agreement, the government also agrees to recommend a sentence of 188 months imprisonment; however, the government is not bound to recommend any particular term of supervised release. Should Probation or the Court determine that the guideline range is lower, the government reserves its ability to seek an upward variance to the extent necessary to achieve a sentence consistent with the sentencing range calculated in this agreement.

3. **Acceptance of Responsibility**

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the government agrees that a 3 point reduction in the offense level for acceptance of responsibility, pursuant to § 3E1.1, is appropriate and agrees to make the appropriate motion at sentencing.

C.     **Effect of Withdrawal from Plea Agreement**

The parties stipulate and agree that the government may unilaterally withdraw from this Plea Agreement under any of the following circumstances:  1) if the defendant does not plead guilty to Count One of the Information; 2) if the Court does not accept the defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the district court or on direct or collateral appeal; 4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal or remand of the count(s) of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being

tendered, the crime of Transportation with Intent to Engage in Criminal Sexual Activity, 18 U.S.C. § 2423(a), are as follows:

> *One*:  The defendant knowingly transported an individual in interstate commerce;

> *Two*:  At the time of the transportation, the individual was less than 18 years old; and

> *Three*:  At the time of the transportation, the defendant intended that the individual would engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense.

As used in this instruction, the term "prostitution" means engaging in or agreeing or offering to engage in any sex act with or for another person in exchange for money or other consideration.[1]

### III. STATUTORY PENALTIES

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 2423(a) is not less than 10 years, nor more than life imprisonment, not more than a $250,000 fine, or both.  18 U.S.C. § 2423(a).  Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2423(a), the term of supervised release is not less than 5 years and up to a term of life.  Defendant will also be required to pay a $100 special assessment fee.

### IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the

---

[1] 18 U.S.C. § 2423(a); Eleventh Circuit Pattern Jury Instruction 93.1 (2010) [modified]. The Tenth Circuit does not have a pattern instruction on this crime.

right to possess firearms, vote, hold elected office, and to serve on a jury.  If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

A. **Future Violations of Supervised Release**

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 5 years without credit for pre-release imprisonment or time previously served on post-release supervision; if the defendant commits any criminal offense under Chapter 109A, 110, or 117, or Title 18, United States Code, Sections 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the defendant shall be sentenced to not less than 5 years and up to the maximum term of imprisonment for the offense, as set forth above.

B. **Registration under the Sex Offender Registration and Notification Act**

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon his release from prison and as a condition of his supervised release, if any, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life.  The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was convicted, where he resides, where he is employed, and where he is a student.  The

7

defendant understands that the requirements for registration include providing his name, residence address, and the names and addresses of any places where he is or will be an employee or a student, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

### C. **Restitution**

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is required to order restitution for the full amount of the victims' compensable losses as defined at 18 U.S.C. § 2259(b)(3) and(c) as may be proved by the government or stipulated to by the parties. Defendant will be required to pay restitution for the full amount of the victims' losses to all victims of the offense to which defendant is pleading guilty. For purposes of this paragraph, the term "victim" is defined in 18 U.S.C. § 2259(c), and the term "full amount of the victims' losses" is defined in 18 U.S.C. § 2259(b)(3). Defendant further understands the amount of loss sustained by each

victim will be determined during the course of preparation of the presentence investigation report.

Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source.  Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims.  Defendant understands full restitution will be ordered regardless of defendant's financial resources.  Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea.  Defendant further agrees to comply with any restitution order entered at the time of sentencing.  Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate.  Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.  Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider

the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below
which are pertinent to those considerations and computations.  To the extent the parties
disagree about the facts set forth below, the stipulation of facts identifies which facts are
known to be in dispute at the time of the execution of the plea agreement.

The statement of facts herein does not preclude either party from presenting and
arguing, for sentencing purposes, additional facts or factors not included herein, which
do not contradict the facts to which the parties have stipulated, and which are relevant
to the guideline computation under § 1B1.3, or to the sentencing factors found in §
1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision.  In
"determining the factual basis for the sentence, the Court will consider the stipulation of
the parties, together with the results of the presentence investigation, and any other
relevant information."  § 6B1.4 Comm.

The parties stipulate that the government's evidence would be:

An investigation related to the Sex Trafficking of Minors began on October 8,
2012, when the mother of MINOR #1[2] reported to the Aurora Police Department that her
daughter, MINOR #1, born in 1996 (who, at the time, was 16 years old) was a runaway.
The mother of MINOR #1 reported that MINOR #1 was supposed to be in Arizona with
her friend, MINOR # 2, born in 1995 (who, at the time, was 17 years old) and MINOR #
2's mother.

On October 12, 2012, the mother of MINOR #1 received phone calls from
MINOR #1 and found that MINOR # 1 was using the phone number XXX-XXX-0339.

---

[2] Pseudonyms have been used in the affidavit to protect the identity of minors
consistent with the provisions of 18 U.S.C. § 3509(d).

She reported this to the Aurora Police Department, Officer Charles Bishop.  Officer Bishop conducted a Google search of that phone number and found that the phone number had been used in numerous escort advertisements.  Some of the advertisements had photographs of a young female.  The female in the escort ads was identified as MINOR #1 by her mother.

On October 13, 2012, the mother of MINOR #1 received information that MINOR #1 was flying from Arizona to New York and would be at the Phoenix Airport on October 14, 2012.  The Phoenix Police department responded to the Phoenix airport, located MINOR # 1, and took her into custody on a runaway warrant.  FBI Special Agent James Egelston interviewed MINOR #1 the following day.  At that time, MINOR #1 did not disclose that she had participated in prostitution.

On November 7, 2012, MINOR #1 was interviewed in association with this investigation.  While on that date initially denying that she had engaged in prostitution, she did admit on that and other occasions that she had engaged in prostitution from at least September 19, 2012, to October 12, 2012, in both the State and District of Colorado and in the State and District of Arizona, as further described below.

On November 9, 2012, Sgt. Dan Steele, of the Denver Police Department, currently assigned to the FBI's Denver Field Office, Rocky Mountain Innocence Lost Task Force, in Denver, Colorado, interviewed MINOR #2 in association with this investigation.  On that date she admitted that she had engaged in prostitution on or about September 19, 2012, in the State and District of Colorado, as further described below.  At one point, MINOR #2 recanted her statements of November 9, 2012, but then

confirmed that she had recanted due to the negative impact the investigation was having on her family.

The facts contained in the following paragraphs of the Stipulation of Facts, with the exception of the final paragraph contained in the Stipulation of Facts, are based upon the above interviews conducted with MINOR #1 and MINOR #2, subsequent statements made by MINOR #1 and MINOR #2, and/or documentary or other evidence obtained during the law enforcement investigation:

MINOR #1 and MINOR #2 met through high school. In early August 2012, the defendant, Terrell Layne Smith aka "Swiss," became acquainted with the mother of MINOR #2. The defendant began to live at the home of the mother of MINOR #2, along with MINOR #2 and four siblings of MINOR #2. MINOR #1 also came to live at the home of MINOR #2 sometime during the late summer of 2012.

While the defendant was living with MINOR #1 and MINOR #2, the defendant told them they could earn money by going out on "dates," referring to prostitution or commercial sex acts. The defendant told the minors didn't always have to have sex, but they would have to have sex sometimes on the dates.

The defendant used his Samsung Galaxy SIII cellular telephone to take pictures of MINOR #1 on more than one occasion in the State and District of Colorado and in the State and District of Arizona. In the pictures, MINOR #1 was posed in sexual poses in various sorts of attire, including lingerie. MINOR #1 took pictures of MINOR #2 posed in sexual poses while partially nude. The photographs were used to advertise the availability of MINOR #1 and MINOR #2 for prostitution on a website named

"Backpage.com."  The defendant used his Samsung Galaxy SIII cellular telephone to access the Internet and post the images on "Backpage.com," advertising that the minors, who were referred to as NOVA (MINOR #1) and SUTRA (MINOR #2) in the ads.  In many of the "Backpage.com" postings, the number for the defendant's Samsung Galaxy SIII cellular telephone, XXX-XXX-0339, was listed as the contact number for individuals who wanted to respond to the ads.  The ads implied that the images of MINOR #1 and MINOR #2 posted in conjunction with the advertisements were 20 or 21 years of age.  MINOR #1 also started posting her own ads on "Backpage.com" using the defendant's phone, although she did not have a "Backpage.com" account.  On those occasions, MINOR #1 was given a pre-paid credit card either by the defendant or by an adult prostitute associated with the defendant to post the ads.

From September 19, 2012, to approximately October 4, 2012, the defendant transported the minors to various locations in the State and District of Colorado, including private homes and hotels, so that one or both minors could participate in prostitution.  It has been confirmed through documentary evidence that the defendant checked in to hotel rooms associated with the prostitution during this time period.

For example, on or about the early morning hours of September 20, 2012, both minors engaged in prostitution with a male at his home in Arapahoe County, in the State and District of Colorado.  The male had responded to an Internet advertisement on "Backpage.com" posted the evening of September 19, 2012, advertising "Tasty 2 Girl Treat Featuring Nova & Sexy Sutra-20".  Both minors engaged in sex acts with the male

and received money in exchange for these acts. The defendant drove the minors to the male's home and transported them to another location after the commercial sex acts were completed.

Beginning on or about approximately October 4, 2012, the defendant, MINOR #1, and MINOR #2 embarked upon a trip to the Phoenix metropolitan area, in the State and District of Arizona, in a vehicle rented by the mother of MINOR #2. Prior to the trip from the State and District of Colorado to the State and District of Arizona, both minors understood that they would be engaging in prostitution in Arizona based on communications with the defendant. Advertisements were posted on "Backpage.com" in the Phoenix, Arizona, metropolitan area advertising that MINOR #1 and MINOR #2 were available for prostitution during the time period they were in Arizona. MINOR #1 engaged in prostitution in the State and District of Arizona during this time period. The defendant, MINOR #1, and MINOR #2 returned to the State and District of Colorado in the vehicle described above on approximately October 10, 2012.

Beginning on or about approximately October 11, 2012, the defendant, MINOR #1, and the mother of MINOR #2 embarked upon a trip to the Phoenix, Arizona, metropolitan area in a vehicle rented by the mother of MINOR #2. At least one advertisement was posted on "Backpage.com" in the Phoenix, Arizona, metropolitan area advertising that MINOR #1 was available for prostitution during this trip to Arizona. MINOR #1 engaged in prostitution in the State and District of Arizona on or about October 12, 2012. On October 14, 2012, MINOR #1 was arrested on a runaway warrant in Phoenix, Arizona.

14

The investigation, including interviews with the minors, reflects that the defendant received a percentage of the money paid to the minors by the prostitution customers for the commercial sex acts described above.  The defendant also bought the minors clothing, bought the minors food, and provided the minors with marijuana during the above-described time period.

On November 9, 2012, the defendant, after waiving his *Miranda* rights, was interviewed by Det. Michael Thrapp, of the Aurora Police Department, currently assigned to the FBI's Denver Field Office, Rocky Mountain Safe Streets Task Force in Denver, Colorado.  The defendant admitted that he knew that MINOR #1 was 16 or 17 years of age.  He admitted that he knew that MINOR #2 was 17 years of age.  He confirmed that he had been living in the same residence as MINOR #1 and MINOR #2. He admitted that the Samsung Galaxy SIII cellular phone was his and that MINOR #1 and MINOR #2 had access to the phone.  He confirmed the phone number associated with the phone was XXX-XXX-0339.  He confirmed that he had driven MINOR #1 and MINOR #2 to Arizona in early October.  He admitted to putting the girls in hotel rooms on the first trip to Arizona; he denied paying for the rooms, but stated that he used pre-paid credit cards to pay for incidentals.  He admitted to smoking marijuana with the minors on the trip but did not admit to providing the marijuana to them.  He also admitted to buying clothing for MINOR #1 in Arizona.

## VI.  ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of sentence in this case is governed by Title 18, United States Code, Section 3553.  In determining the particular sentence to

be imposed, the Court is required to consider seven factors.  One of those factors is the

sentencing range computed by the Court under advisory guidelines issued by the

United States Sentencing Commission.

In order to aid the Court, the parties set forth below their estimate of the advisory

guideline range called for by the United States Sentencing Guidelines. To the extent

that the parties disagree about the guideline computations, the recitation below

identifies the matters which are in dispute.

The defendant agrees and consents that facts that determine the offense level

will be found by the Court, by a preponderance of the evidence, and that the Court may

consider and use any reliable evidence, including hearsay and the facts outlined in the

Presentence Report.  The parties further agree that the stipulation of facts in this plea

agreement will also be used by the Court in determining the sentencing guideline range.

The parties provide the following estimated guideline range for the Court's

consideration pursuant to 18 U.S.C. § 3553(a)(4).  The range and calculation of that

guideline range is an estimate only, and the parties are not bound if the probation

department determines that a different guideline range applies.  Any estimation by the

parties regarding the appropriate advisory guideline application does not limit the

positions the parties may take at sentencing on the appropriate sentence for the Court

to impose; rather, those limits are set out in Part I of this plea agreement.  The Court

may impose any sentence, up to the statutory maximum, regardless of any advisory

guideline range computed, and the parties agree that the Court is not bound by any

position of the parties.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor. However, because this plea agreement is made pursuant to Rule 11(c)(1)(A), the Court is bound by the parties' agreement regarding dismissal of the Indictment once the Court accepts the plea agreement. Alternatively, if the Court determines that it does not intend to dismiss the Indictment as agreed to by the parties as part of this agreement, the Court must first give the parties an opportunity to withdraw from this agreement before it may impose any such different sentence.

To the extent the parties disagree about the estimated guideline sentencing factors, the computations below identify the factors which are in dispute.  § 6B1.4(b).

**Offense Level**:  The base guideline is § 2G1.3.

A. The base offense level for this offense is **28**.  § 2G1.3(a)(3).

B. Because subsection § 2G1.3(a)(3) applies and the offense involved a commercial sex act, there is an increase of **+2** levels, for a total of **30**.

    a. Calculation for Multiple Counts (as per Special Instruction § 2G1.3(d)(1)): § 3D1.4.

        i. Base offense level for the offense involving Minor #2 is **28**. § 2G1.3(a)(3).

        ii. Because subsection § 2G1.3(a)(3) applies and the offense involved

          a commercial sex act, there is an increase of **+2** levels.

    iii.  The adjusted offense level for this offense is **30**.

    iv.  Because this is **equally** serious than the offense calculated in paragraphs A-C above, the difference should be counted as **1** unit; this plus the **1** unit for the offense in A-C above results in a **2** level increase to the Group with the highest offense level.

C. The adjusted offense level for this offense involving Minor #1 and Minor #2 as calculated under § 2G1.3 is **32**.[3]

D. No victim-related, role-in-offense, obstruction and/or multiple count adjustments apply.

E. Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility.  § 3E1.1(a).  Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government.  § 3E1.1(b).  At sentencing, the government will make the appropriate motion for the one-point reduction.

F. The adjusted offense level is **29**.

**Criminal History Category**

G. The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative.  Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court.  Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment.  Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") **VI**.  § 4A1.1.

H. The career offender and repeat and dangerous sex offender adjustments tentatively do not apply. § 4B1.1; § 4B1.5.

**Guideline Ranges**

I. The guideline range resulting from the estimated offense level of 29 and the estimated criminal history category of VI is 151 to 188 months imprisonment.  However, the imprisonment range could be from 87 months (bottom of CHC I) to

---

[3] The parties agree that under these facts, the specific offense characteristics described in § 2G1.3(b)(1) and § 2G1.3(b)(3) do not apply.

188 months (top of CHC VI).

J. Pursuant to § 5E1.2, assuming the estimated offense level of 29, the fine range for this offense would be $15,000 to $150,000, plus applicable interest and penalties.

K. Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

19

## VII.  ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other promises, agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or implied.  In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 9/10/15

_____
TERRELL LAYNE SMITH
Defendant

Date: 9/10/15

_____
Marc Milavitz
Attorney for Defendant

Date: Sept. 10, 2015

_____
Alecia L. Riewerts
Assistant U.S. Attorney